UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIO ROMAN,

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

Case No. C11-1076RSL

ORDER GRANTING IN PART
PLAINTIFF'S MOTIONS FOR
PARTIAL SUMMARY
JUDGMENT

This matter comes before the Court on Plaintiff's motions for partial summary judgment (Dkt. ## 7, 9). Plaintiff asks the Court to conclude as a matter of law that the United States' counterclaim for alleged overpayment of maintenance benefits "has no factual merit." Dkt. # 7. He also asks the Court to find that his employment period for purposes of calculating benefits ended on February 8, 2011, rather than December 31, 2010. Dkt. # 9. The Court DENIES the motion as to the United States' counterclaim. Dkt. # 7. It GRANTS Plaintiff's motion as to benefits. Dkt. # 9.

## I. BACKGROUND

This suit concerns a dispute over wages and benefits Plaintiffs claims he is owed by the United States following his injury aboard the S.S. CAPE JACOB, then a part of the United States' Ready Reserve Fleet. Plaintiff, then 68-years-old, joined the ship at the Port of Saipan, Mariana Islands, on November 18, 2010, to serve as its chief steward. On or about December 24, 2010, he injured his back. The next day, he left the ship and returned to the United States.

ORDER GRANTING IN PART PLAINTIFF'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 1

The United States paid Plaintiff his unearned wages through December 31, 2010, and it paid him maintenance of $16 per day through April 4, 2011, and cure through June 20, 2011. Opp. (Dkt. # 12) at 4. Dissatisfied with this maintenance amount, Plaintiff filed an administrative claim with the U.S. Maritime Administration. The administration denied his claim on June 2, 2011. Plaintiff subsequently filed suit with this Court. He seeks a declaration that the $16-per-day maintenance amount set in the collective bargaining agreement between the United States and the Seafarers' International Union is void as against public policy. He also seeks unearned wages through February 8, 2011, as well as other damages and fees.

## II. DISCUSSION

Plaintiff raises three issues in his motions for partial summary judgment. First, he asks the Court to conclude as a matter of law that the United States' counterclaim for alleged overpayment of benefits lacks merit. Dkt. # 7. Second, he asks the Court to find that he was entitled to unearned wages through February 8, 2011—the date the CAPE JACOB's voyage actually ended. Dkt. # 9. And third, he asks the Court to find that he is at least entitled to an "ammo bonus" through December 31, 2010, if not longer. Id. The United States does not oppose the payment of an "ammo bonus" through December 31, 2010. Dkt. # 17 at 6. Accordingly, the Court GRANTS that part of Plaintiff's motion and confines its focus to the remaining issues.

Because these issues come before the Court on motions for summary judgment, the Court may enter judgment as a matter of law only if it is satisfied that there is no genuine issue of material fact to preclude judgment as a matter of law. Fed. R. Civ. P. 56(c). As the moving party as to each issue, Plaintiff bears the initial burden of informing the Court of the basis for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). He must prove each and every element of his claims or defenses such that no reasonable jury could find otherwise. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). In doing so, he is entitled to rely on nothing more than the pleading themselves. Celotex, 477 U.S. at 322–24. Only if he makes his initial showing does the burden shifts to the United States to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because a genuine issue of material fact exists. Id. at 324.

To be material, the fact must be one that bears on the outcome of the case. A genuine issue exists only if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. Anderson, 477 U.S. at 249. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Id. at 249–50. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

**A. Overpayment of Maintenance**

The Court first considers the viability of the United States' counterclaim for overpayment of maintenance and cure.

The relevant legal principles of maintenance are well established: "Under principles of general maritime law, seamen are entitled to maintenance and cure from their employer for injuries incurred in the service of the ship[.]" Aguilera v. Alaska Juris F/V, O.N.569276, 535 F.3d 1007, 1009 (9th Cir. 2008) (alteration in original) (citation and internal quotation marks omitted). "'Maintenance . . . is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery.'" Id. (emphasis added) (quoting Vaughan v. Atkinson, 369 U.S. 527, 531 (1962)). Cure is generally understood

to require the provision of medical treatment and similarly extends until maximum medical recovery has been reached as a result of "continued and necessary medical treatment." Luksich v. Misetich, 140 F.2d 812, 814 (9th Cir. 1944); see Crooks v. United States, 459 F.2d 631, 632–33 (9th Cir. 1972).

In the present case, there does not appear to be any dispute that Plaintiff was injured in the ship's service. The hitch is that Plaintiff was involved in an automobile accident on February 2, 2011, for which he later sought medical treatment for pain in his neck and upper back. See Dkt. # 7-2 at 1–4. As a result, the United States claims first that the accident may have exacerbated Plaintiff's injuries, causing the Court to overpay maintenance benefits. It further claims that it may have paid for treatments related wholly to the subsequent accident, and that Plaintiff's own medical provider noted on April 4, 2011, that Plaintiff "was allowed to perform all physical duties," yet the United States paid for medical treatments through June 20, 2011.[1]

In the present motion, Plaintiff attacks only the first basis for relief. It argues that there is no connection between the two injuries—that Plaintiff injured his lower back aboard the ship and his upper back in the accident. In support of his contention, he provides the Court with the examination notes of his chiropractor, who noted during Plaintiff's first examination after the automobile accident that "[i]t does not appear like his lower back injury was aggravated by the motor vehicle collision." Dkt. # 7-2 at 2.

In response, the United States argues only that "[d]octors could disagree as to whether injuries to the back can be so clearly delineated," and that, regardless, the chiropractor's own statement reflects a degree of uncertainty. The Court finds that these contentions fall below the line necessary to survive summary judgment. Cf. Anderson, 477 U.S. at 249. The discovery period closed prior to the filing of the United States'

---

[1] The Court also notes that Plaintiff's own exhibits reflect that he was determined to be "fully recovered from [his] low back injury of 12/25/10"on May 11, 2011. Dkt. # 7-2 at 7.

response.  Accordingly, the Court must presume that the United States did not actually get a second opinion.  Its argument is therefore entirely speculative and unavailing. Anderson, 477 U.S. at 249–50.  Its second argument fares no better. Plaintiff's chiropractor plainly concluded that his prior injury was not exacerbated in the second accident.  The United States has offered no evidence that rebuts that conclusion.

In sum, the Court finds that no genuine issue of material fact exists to preclude granting Plaintiff the relief he seeks.  The United States will not be permitted to contend that Plaintiff's second accident exacerbated his first injury.

**B.  The Employment Period**

Next, the Court considers Plaintiff's contention that, despite the fact that his shipping articles provided that he was employed only for the duration of his "voyage . . . for a term of [sic] not to exceed 1 calendar month," he was actually guaranteed a four-month employment term.  Dkt. # 9.

"Courts look first to the seaman's shipping articles to determine whether he is employed for a voyage or a definite period."  Berg v. Fourth Shipmor Assocs., 82 F.3d 307, 309 (9th Cir. 1996).  As the Supreme Court explained in Farrell v. United States, "[i]t is not questioned that the general custom in ships, other than the coastwise trade, is to sign on for a voyage rather than for a fixed period."  336 U.S. 511, 520 (1949).  Still, there are exceptions; as Farrell explains, a "voyage" can be contractually limited to a defined period.  Id. ("The twelve-month period appears as a limitation upon the duration of the voyage and not as a stated period of employment.").  In such cases, the articles obligate the seaman to serve until either the ship arrives at the port of discharge or the fixed period passes, whichever occurs sooner.  Id.  And when the voyage actually ends—either by arrival or expiration—so does the "employer's duty to pay unearned wages."  Berg, 82 F.3d at 310; accord Farrell, 336 U.S. at 521.

ORDER GRANTING IN PART PLAINTIFF'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 5

Of course, a contract is only as good as its terms. In cases of ambiguity or incompleteness, a court may also consider extrinsic evidence, including the terms of a "collective bargaining agreement ("CBA") between the parties," as well as industry practice or the course of dealing or conduct between the parties, to understand the scope of the parties' agreement. Berg, 82 F.3d at 310. And, of course, a court may always consider extrinsic materials incorporated into the contract by reference.

In the present case, the terms of the purported contract appear ambiguous.[2] On the one hand, the voyage articles plainly provide for a voyage duration, and thus an employment period, of no more than a single calendar month. Dkt. # 9-4. On the other, those same articles go on to provide, "This contract <u>may be altered</u> due to applicable labor agreements or crew replacement rotation schedule [sic] <u>to extend</u> or curtail as mutually agreed upon by the master and seaman." Id. (emphasis added). The Court must therefore turn to these documents to determine the scope of the parties' agreement, and therein lies the dispute.

Plaintiff has provided the Court with a labor agreement that states: "Crewmembers must sign articles for a minimum of four months." Dkt. # 9-7. It has also provided union "dispatch cards" that provide for a four-month term. Dkt. # 9-3. In response, the United States provides an excerpt from its deposition of Plaintiff in which he equivocates as to the expected duration of his employment. Dkt. # 18-3. It also provides a declaration from a Matson Navigation Company employee, who declares under penalty of perjury that the company had a practice of using "30-day foreign

---

[2] The Court also notes that Plaintiff contests the validity of the articles, describing them as "phony." Dkt. # 10 at ¶ 5.

ORDER GRANTING IN PART PLAINTIFF'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 6

articles aboard the CAPE JACOB" and that the union was aware of this practice and did not oppose it. Dkt. # 18-4. Plaintiff disputes the veracity of this latter contention.[3]

Considering only Plaintiff's evidence, the Court could not say that it was convinced that Plaintiff proved each and every element of his claim such that no reasonable jury could find otherwise. Celotex, 477 U.S. at 322–24. For one, if the articles are indeed "phony" as Plaintiff contends, Dkt. # 10 at ¶ 5, then there is a very real factual question as to the terms of the agreement between the parties. Second, if the articles are valid, then there is still a question as to whether the previously quoted passage of the bargaining agreement applies in this case. Plaintiff will need to provide the Court with more of that agreement than two pages that appear favorable to his cause before the Court can conclusively determine that he may benefit from the agreement. And finally, Plaintiff's own Complaint seems to suggest that the union dispatch cards represented the initially contemplated period of employment, but were superceded by the after-signed articles. Dkt. # 1 at ¶¶ 6–7 ("Plaintiff signed foreign articles aboard the SS Cape Jacob on November 18, 2010 in the Port of Saipan, Mariana Islands. The foreign articles that plaintiff was required to sign were only for one month at a time. The last foreign articles signed by the plaintiff were executed December 1, 2010.").

Moreover, even assuming that Plaintiff met his initial burden, the United States has presented sufficient evidence to create a triable issue of fact. Given Plaintiff's deposition testimony, a reasonable juror could conclude that he was not told that his position was to last for at least four months. Dkt. # 18-3. And a reasonable juror could

---

[3] Plaintiff argues that this statement is a "self-serving, hearsay declaration by an employee of the shipping company [that] attempts to create a collective bargaining agreement out of whole cloth." Reply (Dkt. # 19) at 1–2. Unfortunately, he offers no evidence to unequivocally rebut the employee's declaration, and thus the Court must consider it as evidence of the course of conduct between the parties.

ORDER GRANTING IN PART PLAINTIFF'S
MOTIONS FOR PARTIAL SUMMARY JUDGMENT - 7

also find that the bargaining agreement had itself been altered by the union's course of conduct. The Court is therefore precluded from entering judgment as a matter of law.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES Plaintiff's motion for partial summary judgment on the United States' counterclaim (Dkt. # 7) and GRANTS Plaintiff's motion as to benefits (Dkt. # 9). In addition, per the United States' non-opposition (Dkt. # 17 at 6), the Court awards Plaintiff his "ammo bonus" of $86.28 for the six-day period between December 25, 2010, and December 31, 2010.

DATED this 4th day of April, 2012.

*[signature]*
Robert S. Lasnik
United States District Judge